UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

ANDREW ENGLANDE, JR. and　　　　　　　　　　　　　　　CIVIL ACTION
BONNIE L. ENGLANDE,

VERSUS　　　　　　　　　　　　　　　　　　　　　　　　NO: 06-8572

BRADSHAW INSURANCE AGENCY
and ALLSTATE INSURANCE COMPANY　　　　　　　　　　　SECTION: "K" (1)

**ORDER AND REASONS**

Before this Court is the Motion for Summary Judgment (Rec.Doc.No. 21) of Plaintiff's Andrew Englande, Jr. and Bonnie L. Englande (collectively "Englande"), wherein they seek a declaration by the Court for reformation of a flood insurance policy issued under the terms of the National Flood Insurance Program ("NFIP"), entitling them to maximum coverage and reimbursement for overpaid premiums.[1]

On the other hand, Defendants, Bradshaw Insurance Agency ("Bradshaw") and Allstate Insurance Company ("Allstate"), seek a declaration by the Court that the policy cannot be retroactively reformed.[2]  After reviewing the pleadings, memoranda, and relevant law, the Court

---

[1] When a claim involves recovery under the National Flood Insurance Program ("NFIP") for losses due to a flood, a court's exercise of federal question jurisdiction over that claim is rarely subject to attack. Based on 42 U.S.C. § 4072, the federal courts have original exclusive subject matter jurisdiction in cases arising out of the NFIP. *See Powers v. Austin-Gettys-Cohen Insurance Agency, Inc., et al.,* 2000 WL 1593401 (E.D. La. Oct. 24, 2000)(Duval, J.)(citing *Van Holt v. Liberty Mutual Fire Insurance Company*, 163 F.3d 161 (3rd Cir. 1998)).

[2] Allstate does not file its own motion for summary judgment, but as articulated by the Fifth Circuit, "where on party moves for summary judgment the district court, in an apporiate case, may grant summary judgment against the movant, even though the opposite party has not actually filed a motion for summary judgment." *Landry v. G.B.A.* 762 F.2d 462,

1

hereby denies Plaintiffs' motion and grants summary judgment in favor of Defendant for the reasons assigned below.

## I.  BACKGROUND

This proceeding concerns a dispute regarding proceeds from a flood policy.  Plaintiffs, Andrew and Bonnie Englande, own a home at 2512 Creely Drive in Chalmette, Louisiana.  *See* Compl. at ¶ 1 (Rec.Doc.No. 1).  On August 10, 1978, Plaintiffs procured a flood policy issued by the Federal Emergency Management Agency ("FEMA") from the National Flood Insurance Program ("NFIP").  *See* Mot. Summ. J., Statement of Uncontested Facts at ¶ 5 (Rec.Doc.No. 21).  At the time FEMA administered the policy, the property was listed as being in Flood Zone A01.  *See Id.* at ¶ 11.   Plaintiff's assert they paid a  premium of $95, which encompassed $30,000 in building coverage and $15,000 in contents coverage.  *See Id.* at ¶ 6,10.

In 1985 FEMA produced a new Flood Insurance Rate Map ("FIRM") which changed the demarcation line between Zone A and Zone B.  *See Id.* at ¶ 15.  Hence, unbeknownst to Plaintiffs, the FIRM demarcation line now bifurcated their property.  This change resulted in a parcel of unimproved property in special flood hazard Zone A, while the home was located in Zone B.[3]  *See Id.* at ¶ 16.

In 1987, Plaintiffs' Standard Flood Insurance Policy ("SFIP") was transferred from

---

464 (5th Cir. 1985 (*citing* Wright, Miller & Kane, *Federal Practice and Procedure: Civil 2d §  2720).*

    [3]       Zone B is a preferred risk zone due to the fact that it is not in the flood plain.

FEMA to Allstate as a Write Your Own ("WYO") Carrier.  *See Id.* at ¶ 24.  At the time of transfer Allstate obtained information stating that the property was located in special flood hazard area Zone A01.  *See Id.* at ¶ 26. Allstate continued to renew Plaintiffs' flood policy and compute coverage and premiums as a special flood hazard policy.  Due to the increasing value of Plaintiffs' home, they annually increased their flood coverage in order to keep pace and protect the rising value.  By September 9, 2004, Plaintiffs' were paying a premium of $784 for dwelling coverage and $64,200 and contents coverage of $42,200.[4]  *See Id.* at ¶ 34.

On August 29, 2005, Hurricane Katrina struck.  Plaintiffs claim that Katrina's winds damaged their home and the floods that ensued caused the home to be a total loss.[5]  They received from Allstate the full policy limit for flood of $64,200 for dwelling and $42,200 for contents.  *See Id.* at ¶ 43.  Plaintiffs maintain that at the renewal of their flood coverage for the September 9, 2005 - September 9, 2006 policy term, Allstate charged an increased premium of $834 for the same coverage they had prior to Katrina based upon their property being located in special flood hazard Zone A.  *See Id.* at ¶ 44.

In May of 2006, Plaintiffs attempted to have their home demolished under a St. Bernard Parish program which provided free demolition for houses located in Special Flood Hazard Zone A.  It was at this time Plaintiffs discovered the 1985 changes to the FIRM, designating that their

---

[4] Plaintiffs assert that during 2004-2005 policy year, their homeowner's premium was $1,184, in return their homeowner's insurer provided coverage for $202,500 for their home in the event it became a total loss.

[5] Plaintiffs' submit that Lash Homes, Inc., a licensed Louisiana contractor, estimated that the cost of replacing the home was $212,000 and further that Bellande Construction estimated the cost to be $291,000.  Defendants' assert that neither estimations are authentic due to the lack of detail which fails to show a line-by-line itemization to support its conclusion.

house was in Preferred Risk Zone B.  *See Id.* at ¶ 47.  Because the home was not located in Zone A, Plaintiffs application was rejected.  On May 30, 2006, First American Flood Data Services confirmed that the Plaintiffs' home was in Flood Zone B, while the unimproved part of their property was in Special Flood Hazard Zone A.  *See Id.* at ¶ 56.

Both parties agree that the flood premiums plaintiffs paid for policy year September 9, 2004, to September 9, 2005, was sufficient to purchase maximum flood coverage under a Preferred Risk Policy ("PRP").  The premium for a PRP is substantially lower than that for a SFIP covering property located in Zone A.  Therefore, had the parties known of the changes to the FIRM, the Plaintiffs suggest that they would have the same coverage through issuance of a PRP but at a lower premium.

On June 27, 2006, Allstate converted Plaintiffs' policy from a SFIP to a PRP endorsement.  *See Id.* at ¶ 57.  The endorsement was only prospective in nature.  The endorsement remedied the coverage by raising it to $75,000 on the home and by lowering the contents coverage to $30,000.  *See Id.* at ¶ 60.  Allstate also lowered the premium to $207, and gave the Plaintiffs a premium refund check for $627.  *See Id.* at ¶ 61.  However, Plaintiffs allege that Allstate failed to rectify the mutual error or reform the policy in effect when Katrina struck.  Defendants assert that the error was not mutual, but rather the rating is based upon the information supplied by the insured.  Furthermore, Defendants maintain that there is no mechanism by which Allstate can retroactively reform the SFIP to a PRP and provide greater coverage

## II.  LEGAL STANDARD

Summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no genuine issue for trial."  *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).  Substantive law determines the materiality of facts, and "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record]...which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v Catrett,* 477 U.S. 317, 323 (1986).  Once the movant meets this burden, the burden shifts to the non-movant "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Id.* at 322.  "[M]ere allegations or denials" will not defeat a well-supported motion for summary judgment.  Fed. R. Civ. P. 56(e).  Rather, the non-movant must come forward with "specific facts" that establish an issue for trial.  *Id.*

When deciding a motion for summary judgment, the Court must avoid a "trial on the affidavits."  *Anderson,* 477 U.S. at 255.  "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts" are tasks for the trier-of-fact.

*Id.* To that end, the Court must resolve disputes over material facts on the non-movants favor. "The party opposing a motion for summary judgment, with evidence competent under Rule 56, is to be believed." *Leonard v. Dixie Well Service & Supply, Inc.,* 828 F.2d 291, 294 (5th Cir. 1987).

### III.  ANALYSIS

The question before the Court is whether a flood insurance policy issued under the terms of the NFIP can be retroactively reformed.  Plaintiffs submit that due to mutual mistake of the parties regarding the flood zone designation, the policy should be retroactively reformed to provide for their true intentions, and as a result, provide the Plaintiffs' with greater coverage and a reimbursement of premiums paid.

**A.     National Flood Insurance Program**

The National Flood Insurance Act of 1968 ("the Act") established the National Flood Insurance Program.  42 U.S.C. §§ 4001–4129.  Two of the main purposes of the National Flood Insurance Act are to "substantially increase the limits of coverage authorized under the national flood insurance program" and to "require States or local communities, as a condition of future Federal financial assistance, to participate in the flood insurance program and to adopt adequate flood plain ordinances...consistent with Federal standards to reduce or avoid future flood losses." 42 U.S.C. § 4002(b)(1) and (3).  Furthermore, the Act is meant to "encourage State and local governments to make appropriate land use adjustments to constrict the development of land

which is exposed to flood damage and minimize damage caused by flood losses." 42 U.S.C. § 4001(e).

Initially, the National Flood Insurance Program was operated primarily through the National Flood Insurance Association, an incorporated pool of private insurance companies. *Spence v. Omaha Indemnity Ins. Co.*, 996 F.2d 793, 794 n.1 (5th Cir. 1993). Pursuant to this arrangement, if a pool company refused to pay a claim under the flood insurance policy, the insured was permitted to sue the pool insurance company for the "disallowance or partial disallowance of the claim" in Federal District court. 42 U.S.C. § 4053. On January 1, 1978 HUD terminated the National Flood Insurance Association program and assumed all operational responsibilities, making the Federal Emergency Management Agency ("FEMA") principally responsible for its operation, pursuant to 42 U.S.C. § 4071. *Spence,* 996 F.2d at 794, n. 1. Thus, the new arrangement, referred to as Part "B" of the NFIP, is administered by FEMA through the Flood Insurance Administration.

In 1983, FEMA promulgated regulations that provided for claims adjustment by private insurers operating as "Write-Your-Own" insurance companies ("WYO's"). 44 C.F.R. §§ 61.13(f), 62.23(a). The flood insurance policies issued under the NFIP are called Standard Flood Insurance Policies ("SFIP"). An SFIP may be purchased directly from FEMA, see 44 C.F.R. § 62.3C(c) or through a WYO carrier. 44 C.F.R. § 61.13(f). The relationship between FEMA and WYO carriers is defined in 44 C.F.R. Pt. 62., App. A.

Premiums paid are remitted to the Flood Insurance Administration. 44 C.F.R. Pt. 62, App. A, Article VII(b). WYO companies also draw money from FEMA through letters of credit to disburse claims. Thus, regardless of whether FEMA or WYO company issued a flood

7

insurance policy, the United States Treasury Funds are used to pay the insured's claims. *See Gowland v. Aetna,* 143 F.3d 951, 955 (5th Cir. 1998); *In re Estate of Lee*, 812 F.2d 253, 256 (5th Cir. 1987). WYO companies shall act as "fiscal agents" of the United States, but not as "general agents." 42 U.S.C. § 4071(a)(1); 44 C.F.R. § 62.23(g). WYO companies issue SFIP's in their own names. 44 C.F.R. § 61.13(f), 62.23(a).

However, in order to maintain control over the provisions of the flood insurance policy, the government does not allow the WYO companies to alter the SFIP's. 44 C.F.R. §§ 61.4(b), 61.13(d). FEMA regulations establish the terms of the SFIP, the rate structures, and premium costs. 42 U.S.C. § 4013. Yet, WYO companies have substantial autonomy in the marketing and handling of their claims. "In carrying out its function under this subpart, a WYO Company shall use its own customary standards, staff and independent contractor resources, as it would in the ordinary and necessary conduct of its own business affairs, subject to the Act and regulations prescribed by the Administrator under the Act." 44 C.F.R. § 62.23(e).

With respect to what law applies in interpreting the provisions of the SFIP, the Honorable Judge Berrigan has articulated the standard to be applied as follows:

> It is well established that the federal statutory and common law governs the interpretation of the SFIP. *Linder and Assocs., Inc. v. Aetna Cas. and Sur. Co.*, 166 F.3d 547, 550 (3rd Cir. 1999) (citations omitted). Thus, "neither the statutory nor decisional law of any particular state is application to [the SFIP]." *Id.* (quoting *Sokowski v. National Flood Ins. Program,* 834 F.2d 653, 655 (7th Cir. 1987) (quotations omitted)).
>
> Under the federal common law, the SFIP is construed using standard insurance law principals. *Id.* (citations omitted). These principals dictate that the SFIP is to be interpreted according to its plain, unambiguous meaning, keep interpretation should be 'uniform throughout the country' and that 'coverage should not vary from state to state.' "*Id.* (quoting *Nelson v. Becton*, 929 F.2d 1287, 1291 (8th

>  Cir. 1990)).  Nevertheless, ambiguities should be construed in favor
> of the insured and against the insurer.  *Id.*  (citing *Aschenbrenner v.
> United States Fidelity & Guar. Co.*, 292 U.S. 80, 84-85, 54 S.Ct. 590,
> 78 L.Ed. 1137 (1934)). rapore

*Rodgers v. Allstate Ins. Co.*, 2007 WL 1029480 (E.D. La. Mar. 30, 2007).

**B.**     **Reformation of SFIP**

As a general rule, the terms of the SFIP promulgated by FEMA are strictly construed and enforced because claims under an SFIP directly affect the United States Treasury. *Formal v. FEMA*, 138 F.3d 543, 545 (5th Cir. 1998)(citing 44 C.F.R. §§ 61.13(a), (d), (e)).  Thus, no coverage can be afforded unless it is expressly provided for under the terms of the SFIP. *See* 44 C.F.R. § 61.5(e)(The standard flood insurance policy is authorized only under the terms and conditions established by federal statute, the program's regulations, the Administrator's interpretations and the express terms of the policy itself).  Regarding reduction and reformation of coverage, the Standard Flood Insurance Policy ("SFIP") states,

> VII. General Conditions
> ....
>    G. Reduction and Reformation of Coverage
>       1. If the premium [Insurer] received from [Insured] was not enough to buy the kind and amount of coverage [Insured] requested, [Insurer] will provide only the amount of coverage that can be purchased for the premium payment [Insurer] received.
>       2. The policy can be reformed to increase the amount of coverage resulting from the reduction described in G.1. above to the amount you requested as follows:
>       ....
>          (b) Discovery of Insufficient Premium or Incomplete Rating Information After a Loss:
>             (1) If [Insurer] discover(s) after [Insured] has a flood loss that [Insured's] premium payment was not

> enough to buy the requested amount of coverage, [Insurer] will send [Insured] and any mortgagee or trustee known to [Insurer] a bill for the required additional premium for the current and the prior policy terms. If [Insured] or the mortgagee or trustee pay the additional premium within 30 days of the date of [Insurer's] bill, [Insurer] will reform the policy to increase the amount of coverage to the originally requested amount effective to the beginning of the prior policy term.
> (2) If [Insurer] discover(s) after [Insured] has a flood loss that the rating information [Insurer] has is incomplete and prevents [Insurer] from calculating the additional premium, [Insurer] will ask [Insured] to send the required information. [Insured] must submit the information before [Insured's] claim can be paid. Once [Insurer] determine(s) the amount of additional premium for the current and prior policy terms, [Insurer] will follow the procedure in G.2.b.(1) above.

44 C.F.R. Pt. 61, app. A(1), art. VII(G).

Moreover, the Court is unaware of any jurisprudence or legislative history that would shed light on the application and interpretation of the Reformation Provision of the SFIP. The Court finds that the Reformation Provision is not ambiguous and must be applied as plainly stated.[6] Accordingly, the Court construes the Reformation provisions as narrowly defined circumstances in which an insured may recover. More particularly, the terms of the SFIP specifically state that "the policy can be reformed...as follows...". 44 C.F.R. Pt. 61, app. A(1), art. VII(G). The policy does not assert that the it can be reformed 'such as' or 'for example'. Therefore, the Court finds that the guidelines are exclusive rather than illustrative. Furthermore, the Reformation Provision only stipulates that reformation after a loss can be granted if the

---

[6] Because the court finds that the terms of the SFIP are not ambiguous, federal common law does not apply.

premium paid was too low for the coverage requested. Thus, because the facts presented do not squarely fit within the provisions enunciated by the terms of the SFIP, and the terms must be applied as expressly articulated, retroactive reformation of the policy must be denied.

Plaintiffs assert that the flood insurance policy should be reformed to provide for adequate coverage that would have been procured but for a mutual mistake regarding the incorrect flood zone. Plaintiffs cite case law showing that insurance contracts may be reformed, however, they fail to cite case law in support of the proposition that the SFIP can be reformed. Moreover, the Court is unable to find such jurisprudence.[7] Therefore, because the Court must apply the terms of the SFIP as expressly stipulated, Plaintiffs contention is without merit.

Furthermore, in *Lawrence v. Fidelity Nat'l Ins. Co.,* the Honorable Judge Barbier asserted:

> Plaintiffs have a duty to make certain that they fully understood the terms and conditions of the NFIP. Plaintiffs cannot claim that they fulfilled the legal duty, became specifically aware of the provisions and coverage available under the NFIP, and then assert that it was the [Insurer]'s responsibility to insure that they had purchased the best possible coverage available.

*Lawrence v. Fid. Nat'l Ins. Co.*, 2007 LEXIS 42556, at *14 (E.D. La. Jun. 8, 2007)(citing *Dobson v. Allstate Ins. Co.*, 2006 LEXIS 55832 (E.D. La. Jul, 21, 2006)). Thus, the Plaintiffs are charged with the burden of familiarizing themselves with the policy's terms and limits. They cannot shift blame to the Insurer for not providing them with adequate coverage. Hence,

---

[7] In *Oaks v. Allstate Ins. Co.*, the Court allowed the Insurer to retroactively reform the SFIP, however, the Court found reformation was available under the SFIP provision which stated "[Insured] has the right to review the information [Insurer] give[s] [Insured] at any time and to revise [Insured's] policy based on [Insured's] review". *Oaks v. Allstate Ins. Co.*, 2006 WL 3328179, at *7 (E.D. Ky. Nov. 14, 2007)(citing 44 C.F.R. Pt. 61, app. A(1), art. I)).

Plaintiffs cannot assert mutual mistake to circumvent the responsibility of knowing the availability of coverage. The reformation provisions articulated by FEMA contemplate reformation for only the limited situations expressed and cannot be broadened to encompass the present matter. Accordingly,

**IT IS ORDERED** that Defendants cross motion for summary judgement be **GRANTED** and Plaintiffs' action is **DISMISSED WITH PREJUDICE**.

New Orleans, Louisiana, on this 22nd day of August, 2007.

_____
STANWOOD R. DUVAL, JR.
UNITED STATES DISTRICT COURT JUDGE